# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES R. BLACKMON, ) | |
| ) | No. 14-cv-0184 |
| Claimant, ) | |
| ) | Magistrate Judge Jeffrey T. Gilbert |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant James Blackmon ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, the Acting Commissioner of Social Security ("the Commissioner"), denying his Disability Insurance Benefits ("DIB") application under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") application under Title XVI of the Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6.] The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. [ECF Nos. 23, 32.] For the following reasons, Claimant's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded to the Social Security Administration ("the SSA") for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

On August 10, 2010, Claimant filed concurrent applications for DIB and SSI, alleging a disability onset date of May 25, 2010. (R. 168-69, 172-76.) After an initial denial and a denial

on reconsideration for both claims, Claimant filed a request for an administrative hearing on May 2, 2011. (R. 83-86, 110-11.) Claimant, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("the ALJ") on January 21, 2012. (R. 40-82.) A Vocational Expert ("the VE") was present and also offered testimony. (*Id.*)

On February 27, 2012, the ALJ issued a written decision denying Claimant's applications for DIB and SSI and found that he was not disabled under the Act. (R. 21-34.) As an initial matter, the ALJ first noted that Claimant met the insured status requirements through December 31, 2014. (R. 26.) The opinion then followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520(a)(i)-(iv).

At step one, the ALJ found Claimant had not engaged in Substantial Gainful Activity ("SGA") since his alleged onset date of May 25, 2010. (R. 26.) At step two, the ALJ found Claimant had the severe impairments of gout, arthritis, obesity, rheumatoid arthritis, and a learning disorder. (*Id.*) At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Before step four, the ALJ found Claimant had the Residual Functional Capacity ("RFC") to perform light work, except that he occasionally can climb ladders, ropes, or scaffolds, kneel, or crawl. (R. 28.) The ALJ further found that Claimant should have no more than occasional, concentrated exposure to extreme cold or extreme heat and should have no more than brief and superficial conversations with coworkers, supervisors, and the public. (*Id.*) Finally, the ALJ determined that Claimant should not be required to read more than short and simple lists or messages. (*Id.*) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 19.) At step five, the ALJ considered Claimant's age,

marginal education, work experience, and RFC and found there were jobs existing in significant numbers in the national economy that Claimant could perform, such as a small products assembler, packager, and sorter. (R. 33.) The ALJ further acknowledged that Claimant would be unable to perform those positions due to his marginal education and found that he would be able to perform the duties of a fast food cook. (*Id.*) Because of this determination, the ALJ found Claimant was not disabled under the Act. (*Id.*) On October 9, 2013, the Appeals Council denied Claimant's request for review rendering the ALJ's decision as the final decision of the Commissioner. (R. 4-6.)

## II.  STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

3

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. ANALYSIS

Claimant presents two issues for review. First, he argues that the ALJ failed to create an accurate RFC assessment that incorporated all of his purported impairments. (Pl. Mot. At 5.) Claimant also argues that the ALJ's credibility determination is not supported by substantial evidence. (Pl. Mot. At 10.)

A.  **The Credibility Determination**

Claimant argues that the medical record did not substantiate the ALJ's adverse credibility determination. (Pl. Mot. At 11.) Because an ALJ's credibility determination generally will affect the outcome of the RFC, the Court addresses Claimant's credibility argument first. *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (the assessment of a claimant's ability to work will often depend heavily on the credibility of [his] statements concerning the "intensity, persistence and limiting effects" of her symptoms.) Here, the ALJ determined that the diagnostic testing and infrequent treatment indicated that Claimant's allegations of pain were not fully credible. To support the adverse credibility determination, the ALJ relied upon several of the

state agency medical doctors' physical examinations and accordingly distributed weight based upon support from the objective medical evidence. After a review of the ALJ's written opinion, however, the Court finds that remand is appropriate because the ALJ did not provide sufficient explanation as to how she evaluated Claimant's credibility and did not complete the logical bridge from the medical evidence to her conclusions.

Though the term credibility has been removed from the regulations following the new Social Security Regulation ("SSR") 16-3p, which superseded the previous SSR 96-7p, the new SSR still requires the ALJ to consider familiar factors in evaluating a claimant's symptoms of pain such as testimony, objective medical treatment, medication and its side effects, etc. *See* SSR 16-3P * 7 (S.S.A.), 2016 WL 1119029. Here, there are a few factors that the ALJ seems to have ignored or not explained in her analysis.

At the hearing, Claimant testified that while he was compliant with medication, he often became drowsy and forgetful throughout the day because of it. (R. 47.) The ALJ made no reference to these purported side effects from the medication in her analysis, despite the fact that they likely would impact Claimant's ability to work full-time. *See Flores v. Massanari*, 19 F. App'x 393, 399 (7th Cir. 2001) (the side effects of medication can significantly affect an individual's ability to work and therefore should figure in the disability determination process.)

The ALJ also appears to have decided that Claimant was not credible in his reports of pain because though he used a cane, he could walk the same distance without a cane but at a slower pace. (R. 31.) Though the ALJ acknowledged Claimant's testimony that he relied on the cane to reduce pain and pressure on his left ankle, she found that Claimant "could ambulate the same distance at a slower pace without the use of a cane." (*Id.*) The ALJ used Claimant's intermittent use of a cane to justify her adverse credibility determination rather than consider the

5

cane as part of a treatment plan that Claimant undertook to alleviate his pain symptoms, as she was required to do. *See* SSR 16-3p, at *7. That Claimant could ambulate without using the cane, though at a slower pace, does not undercut his assertion that he uses a cane to reduce pain and pressure on his left ankle. *Id.*

The ALJ also did not indicate that she considered Claimant's testimony at the hearing. Claimant testified that he would have his son massage his feet to alleviate his pain. (R. 49.) In addition, Claimant stated that when not using his cane, he would use an office chair with wheels to support himself as he ambulated around the room. (R. 62.) Because the ALJ did not reference Claimant's hearing testimony at all in her written decision, the Court cannot definitively say that she properly considered Claimant's efforts to alleviate his symptoms in his assessing his credibility.

Claimant's lack of medical treatment also influenced the ALJ's credibility analysis, but an ALJ cannot rely on infrequent or sporadic treatment to support an adverse credibility determination without first exploring possible good reasons for a claimant's sparse medical treatment. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) *citing Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding when the claimant does not have a good reason for the failure or infrequency of treatment. *Craft*, 539 F.3d 668 at 679. However, an ALJ "must not draw any inferences" about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care. For example, an inability to afford treatment is one reason that can "provide insight into the individual's credibility." *Id.*

In this case, although the ALJ drew a negative inference about Claimant's credibility from his lack of medical care for his gout and arthritis, she failed to question him about his lack

6

of treatment. Because of the lack of exploration on part of the ALJ, the Court is unable to ascertain whether Claimant had the requisite "good reason" for not seeking frequent medical attention for his impairments. Moreover, the ALJ determined that "although [Claimant] reported his pain at a level of eight or nine out of ten on several occasions, his treatment has been conservative." (R. 31.) But the fact that he has not regularly received treatment from a doctor does not mean that Claimant did not indeed experience pain at those levels.

The issue before the Court is whether the ALJ properly considered Claimant's disability claim per agency regulations and established legal precedent. Because the ALJ should have considered Claimant's testimony or, if the ALJ did consider the testimony, should have explained why that testimony was not accorded any weight, the Court concludes that remand is appropriate so that the ALJ can provide further explanation. It is especially significant in this case, when Claimant's hearing testimony presents information not contained in the objective medical evidence.

**B.     The RFC Assessment**

Claimant also contends that the ALJ's determination that he could perform light work is erroneous because he has numerous limitations that would preclude him from working even at a light level. (Pl. Mot. At 6.) At the fourth and fifth steps, the ALJ must consider an assessment of a claimant's RFC. The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545(a)(1). The RFC must be assessed based on all the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1); *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In determining an individual's RFC, the ALJ must evaluate all limitations that arise from

medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling. S.S.R. 96–8p; *Villano,* 556 F.3d at 563.

Here, as discussed above, the ALJ determined that Claimant had several severe physical impairments, including gout and rheumatoid arthritis, but ultimately concluded that Claimant had the RFC to perform light work with certain physical limitations. As defined by regulations, light work entails a standing and walking requirement for up to six hours a day. *See DeFrancesco v. Bowen,* 867 F.2d 1040, 1043 (7th Cir. 1989) (The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday); *see also* SSR 83-10 * 6 (S.S.A.), 1983 WL 31251. Moreover, 20 C.F.R. § 404.1567(b) provides the definition for light work: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *See also Pepper v. Colvin,* 712 F.3d 351, 362 (7th Cir. 2013).

Understanding what light work entails, the ALJ nevertheless determined that Claimant could perform work at this level. In an internal medicine consultative examination performed by Dr. ChukwuEmeka Ezike on November 6, 2010, Claimant was found to be suffering from a history of gout and arthritis. (R. 310-14.) Dr. Ezike noted that Claimant's gait was slow and antalgic without the use of an assistive device, indicating that his ability to ambulate freely is inhibited. (R. 312.) In a medical assessment of ability to do work-related activities performed by Dr. Crawford on December 27, 2010, Dr. Crawford opined that Claimant can stand, walk, and sit for at most two hours in an eight-hour workday. (R. 481-82.)

Though the ALJ gave little weight to Dr. Crawford's medical opinion, her reasons for doing so are unclear. The ALJ stated that Dr. Crawford's December 27, 2010 opinion was not supported by the record, including his own treatment records for Claimant, but does not point to any inconsistency in the treatment notes and does not cite to evidence that shows contradicts Dr. Crawford's findings. (R. 32.) What the treatment notes do show, however, is that Claimant presented to Dr. Crawford on different occasions for moderate joint pains exacerbated by attempts to lift and ambulate. (R. 497, 502.)

Here, the ALJ seems to mention only the medical evidence favoring the denial of benefits. And from her analysis, the Court cannot discern whether she considered the record as a whole. An ALJ may not ignore an entire line of evidence that is contrary to her findings, *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999), rather she must articulate at some minimal level her analysis of the evidence to permit an informed review. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

Claimant also argues that the ALJ failed to orient the VE to all of his impairments during the hearing. (Pl. Mot. At 9.) Because the case is being remanded to the agency for reevaluation of Claimant's credibility and his RFC, the Court need not address the issue of the VE hypotheticals. However, on remand, the ALJ must provide the VE with a complete picture of Claimant's RFC. *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011). The hypothetical question posed to a VE need not include every physical limitation of a claimant, but if the hypothetical posed to the VE does not include all of the claimant's limitations, there must be some amount of evidence in the record indicating that the VE knew the extent of the claimant's limitations. *See Young*, 362 F.3d at 1003. The VE must know about a claimant's limitations so that the VE does not refer to work that the claimant is not capable of undertaking. *Steele v.*

*Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014).

In sum, the Court stresses that nothing in the Memorandum Opinion and Order should be construed as an indication that the Court believes that Claimant was disabled as of May 25, 2010, his alleged onset date of disability, or that he should be awarded disability benefits. To the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings. The Court finds that remand is necessary for the ALJ to further clarify her analysis.

### IV. CONCLUSION

For all of the reasons set forth in the Court's Memorandum Opinion and Order, Claimant's motion for summary judgment [ECF No. 23] is granted. The Commissioner's motion for summary judgment [ECF No. 32] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 21, 2016